VILLANTI, Judge.
 

 John R. DeSilva appeals the trial court’s nonfinal order appointing, without notice or a hearing, a receiver for certain real estate involved in a foreclosure action. He argues the trial court erred by not providing notice and an opportunity to be heard before entry of the order when First Community Bank of America failed to establish that immediate appointment of a receiver without notice or a hearing was necessary. We agree and, therefore, reverse and remand with directions.
 

 This case arose in the context of a mortgage foreclosure of a single-family, non-homestead residence located in St. Pete Beach. The Bank filed a verified complaint for foreclosure, along with an unverified motion to appoint a receiver on an expedited basis. These documents were served on DeSilva’s attorney on December 29, 2009. Count IV of the complaint sought appointment of a receiver, alleging that: (1) DeSilva “[did] not have the financial capability of maintaining the property which is in a residential community and requires maintenance and upkeep”; (2) his “inability to maintain the property will result in the possibility of complaints from the neighboring residential homeowners as well as code violations from the City and County for failure to maintain the property”; (3) DeSilva had been approached by individuals interested in purchasing the property and the Bank wanted a receiver to take over any sales negotiations and execute any documents necessary to complete the sale of the property; and (4) expedited appointment of a receiver was necessary “to see that the property is protected from waste which includes both the maintenance issues, as well as the capability of selling the property at what is deemed to be a reasonable financial arrangement with interested buyers.”
 

 The Bank’s unverified motion for expedited appointment of a receiver made similar allegations: (1) the Bank wanted a receiver appointed to deal with unidentified potential buyers who were hesitant to buy the property because of the pending foreclosure action; (2) a receiver was necessary to oversee the property’s mainte
 
 *288
 
 nance, to avoid complaints from neighbors, and to avoid possible code violations; and (3) the loan documents provided for appointment of a receiver in the event of default. While the motion generally asserted that appointment of a receiver is appropriate when the value of the property is insufficient to cover the debt at issue, neither the Bank’s motion nor its complaint affirmatively asserted that the actual value of the property was insufficient to cover the debt, and the record before us otherwise contains no evidence that this was the case. Without notice or hearing on the motion, on January 11, 2010, the circuit court entered an order appointing a receiver. Here, this was error.
 

 The notice provisions of Florida Rule of Civil Procedure 1.610 clearly apply to an application for receivership.
 
 See
 
 Fla. R. Civ. P. 1.620(a) (“The provisions of rule 1.610 as to notice shall apply to applications for the appointment of receivers.”);
 
 Phillips v. Greene,
 
 994 So.2d 371, 372 (Fla. 3d DCA 2008) (reversing ex parte receivership order which did not comply with rule 1.610). Ordinarily, a hearing is required before appointment of a receiver.
 
 Edenfield v. Crisp,
 
 186 So.2d 545, 548 (Fla. 2d DCA 1966);
 
 Phillips,
 
 994 So.2d at 373. Pursuant to rule 1.610, a receiver can be appointed without notice or a hearing if: (1) “it appears from the
 
 specific facts
 
 shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage
 
 will
 
 result to the movant before the adverse party can be heard in opposition”; (2) “the movant’s attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required”; and (3) the trial court’s order “define[s] the injury, state[s] findings by the court why the injury may be irreparable, and give[s] the reasons why the order was granted without notice if notice was not given.”
 
 See
 
 Fla. R. Civ. P. 1.610(a)(l)-(2) (emphasis added);
 
 Phillips,
 
 994 So.2d at 373. None of these elements were established by the pleadings in this case.
 

 First, we note that the loan documents do contain a provision for appointment of a receiver as a matter of right and without notice if the Bank instituted foreclosure proceedings. While mortgage agreements often contain provisions whereby the borrower in a mortgage contract consents to the appointment of a receiver in the event of default, the appointment of a receiver is still, by case law, not a matter of right even when the mortgage documents provide for such appointment.
 
 See Carolina Portland Cement Co. v. Baumgartner,
 
 99 Fla. 987, 128 So. 241, 249 (1930) (“[T]he mere fact that the mortgage pledges the rents and profits, and consents in advance to the appointment of a receiver upon default or breach of conditions, does not mean that upon such a showing alone a court of equity should appoint a receiver as a matter of course.”);
 
 Seasons P’ship I v. Kraus-Anderson, Inc.,
 
 700 So.2d 60, 61 (Fla. 2d DCA 1997) (stating that appointment of a receiver is not a matter of right even if the mortgage so provides). Therefore, while the parties’ agreement to the appointment of a receiver is considered in determining whether to grant an ex parte receivership, it alone is not dispositive and the provisions of rule 1.610 are not thereby bypassed.
 

 “The appointment of a receiver ... should be approached with caution and circumspection.”
 
 Edenfield,
 
 186 So.2d at 548. The party seeking appointment of a receiver without a hearing must, as a condition precedent, establish an urgent need for dispensing with notice and a hearing.
 
 See
 
 Fla. R. Civ. P. 1.610(a)(1)(A);
 
 Dixie Music Co. v. Pike,
 
 135 Fla. 671, 185 So. 441, 447 (1938) (“The appointment of a receiver without notice should not be made
 
 *289
 
 except upon ... showing that the injury will be done if an immediate remedy is not afforded. This power should be exercised only in cases of the greatest emergency, demanding the immediate interference of the court for the prevention or [sic] irreparable injury[.]”) (internal citation omitted).
 

 The requesting party must set forth, in sworn form and with sufficient particularity, specific facts and circumstances reflecting that delay in appointing the receiver
 
 will
 
 result in irreparable injury to the property, or that giving notice itself
 
 will
 
 precipitate such injury to the property.
 
 See
 
 Fla. R. Civ. P. 1.610(a)(1)(A);
 
 Dixie Music
 
 Co., 185 So. at 446 (“To justify granting an injunction ex parte, without notice, the allegations of the sworn bill or the accompanying affidavit
 
 must state facts
 
 showing how and why the giving of notice will accelerate or precipitate the injury[.]”);
 
 Martorano v. Spicola,
 
 110 Fla. 55, 148 So. 585, 586 (1933)
 
 (“[NJo
 
 order for the appointment of a receiver shall be granted without such notice, unless it is manifest ... from the sworn allegations of the bill, or affidavit ... that the injury apprehended will be done if the immediate remedy of a receivership is not afforded.”).
 

 Thus, a receivership might be appropriate without notice and a hearing if the property is at immediate risk of being diverted, dissipated, destroyed, allowed to deteriorate, or wasted.
 
 See Cassara v. Wofford,
 
 159 Fla. 565, 28 So.2d 904, 905 (1947) (quashing ex parte receivership because it was not apparent that giving notice of intent to appoint receiver would result in immediate injury);
 
 Dixie Music Co.,
 
 185 So. at 447 (approving ex parte receivership where defendant could leave the state with the property);
 
 Martorano,
 
 148 So. at 586 (reversing ex parte receivership order based solely on mortgage language allowing appointment of a receiver without notice);
 
 Carolina Portland Cement Co.,
 
 128 So. at 244 (“Land cannot run away, and buildings may be kept insured. Hence there is generally good reason for denying a receiver of mere real estate unless waste is being committed, or there be insolvency of the mortgagor and inadequacy of the property as security.”);
 
 Edenfield,
 
 186 So.2d at 549 (affirming receivership based on allegations that property and assets had been diverted);
 
 Polycoat Corp. v. City Nat’l Bank of Miami,
 
 327 So.2d 126, 127 (Fla. 4th DCA 1976) (reversing ex parte receivership because there were no “extreme circumstances of irreparable damage”).
 

 Based on the principles outlined above, an ex parte receivership was not appropriate in this case. The Bank did not establish that an ex parte receivership was necessary to avoid immediate irreparable harm to the mortgaged property, or that giving notice and holding a hearing would accelerate or precipitate any injury. It simply asserted, in conclusory fashion, that DeSilva did not have the financial capability to maintain the property and that he
 
 might
 
 violate city and county codes and
 
 might
 
 get complaints from neighbors. At most, the verified complaint merely asserted many truisms common to foreclosure actions rooted on nonpayment: that the mortgagor who was in default may not pay maintenance and upkeep the property. This was insufficient to obtain an ex parte receivership. Even where a hearing has been held before appointment of a receiver, courts have rejected conclusory allegations of waste and destruction of property.
 
 See, e.g., Atco Constr. & Dev. Corp. v. Beneficial Sav. Bank, F.S.B.,
 
 523 So.2d 747 (Fla. 5th DCA 1988) (reversing appointment of a receiver where witness testified that she did not know the condition of the property and there was no showing of waste);
 
 see generally ANJ Future
 
 
 *290
 

 Invs., Inc. v. Alter,
 
 756 So.2d 153, 154 (Fla. 3d DCA 2000) (reversing appointment of receiver because party seeking receivership did not show that mortgagor was wasting the property or subjecting it to serious risk of loss). Therefore, something more than a generic possibility of injury must be shown before an ex parte receiver is appointed.
 

 We also reject the Bank’s argument that it needed an ex parte receivership to assist in the sale of the property. A receiver is typically appointed in foreclosure proceedings to preserve the status quo, preserve the property, and collect and apply rents and profits to the payment of the mortgage.
 
 See Orlando Hyatt Assocs., Ltd. v. F.D.I.C.,
 
 629 So.2d 975, 977 (Fla. 5th DCA 1993). Appointing a receiver ex parte to negotiate the sale of a single-family home before the foreclosure action is finalized is somewhat unorthodox because “ ‘a mortgage merely creates a lien against the land with the title and right of possession remaining with the mortgagor/owner. Thus, in order to protect a borrower’s due process rights, the courts have determined that a mortgagee can acquire possession upon default only through judicial foreclosure[.]’ ”
 
 Id.
 
 (quoting
 
 In re Aloma Square, Inc.,
 
 85 B.R. 623, 625 (Bankr.M.D.Fla.1988));
 
 see also Carolina Portland Cement Co.,
 
 128 So. at 249 (“[T]he mortgagor’s possession must be respected until foreclosure and sale, unless meanwhile the equitable rights of the mortgagee require the interposition of a court of equity to protect the security by way of injunction or receivership.”). In this case, there were no exigent allegations warranting a receiver to sell the property before the foreclosure action was final.
 

 The Bank also argues that an ex parte receivership was appropriate because the mortgage documents contained an assignment of rents provision which provided for appointment of a receiver in that context. However, the Bank’s motion for expedited appointment of a receiver did not raise the assignment of rents provision as a basis for appointing a receiver; it relied on the need to maintain the property and negotiate its sale. Furthermore, while count III of the verified complaint sought assignment of rents, the Bank did not present a verified allegation that any rents were actually being collected on the property and that any such rents were being dissipated, and the record before us contains no such evidence.
 
 See Carolina Portland Cement Co.,
 
 128 So. at 249 (“Where the rents ... are expressly made a part of the security, and the mortgagor is receiving them but refusing to apply them to the mortgage debt, which he is allowing to go in default ... a court of equity should appoint a receiver unless the mortgagor makes it clear that the real property covered by the mortgage will sell for enough to pay the debt and charges due the mortgagee and thus affords ample and entirely adequate security.”); Atco
 
 Constr. & Dev. Corp.,
 
 523 So.2d at 750 (reversing receivership where there was no evidence that there was a tenant on the premises or that any rents were being collected). In fact, a letter in the record from the Bank’s attorneys to DeSilva on November 23, 2009, suggests that the Bank did
 
 not
 
 know if DeSilva was receiving any rents from the property. Therefore, the assignment of rents provision did not warrant an ex parte receivership.
 
 See generally Seasons P’ship I,
 
 700 So.2d at 62 (reversing receivership based on assignment of rents clause when there was no evidence that the mortgagor was wasting the property and there were other methods to protect the mortgagee’s interests).
 
 [1]
 

 Finally, rule 1.610 requires the trial court’s ex parte order to define the
 
 *291
 
 injury, state why the injury may be irreparable, and give reasons for appointing a receiver ex parte. Fla. R. Civ. P. 1.610(a)(2). In addition to the pleading deficiencies described above, the trial court’s order here did not comply with the rule’s requirements because it contained no factual findings whatsoever. This was also error.
 

 In conclusion, something more than the presence in the mortgage of a receivership clause must be demonstrated in order to allow an ex parte receiver; to wit, demonstration of an urgent need. In this case, the trial court abused its discretion by entering a receivership order without notice and a hearing when an urgent need was not demonstrated. The court also erred by not entering an appropriate order. Therefore, we must reverse and remand with directions to vacate the ex parte receivership. On remand, if the Bank so wishes, it must be afforded an opportunity to establish the need for a receiver at a properly noticed evidentiary hearing.
 

 Reversed and remanded with directions.
 

 ALTENBERND and LaROSE, JJ„ Concur.
 

 [1]
 

 . Section 697.07, Florida Statutes (2009), provides a simple method to enforce rent as
 
 *291
 
 signment clauses.
 
 See Seasons P'ship I,
 
 700 So.2d at 62.